MATTER OF CONTOPOULOS

In VISA PETITION Proceedings

\ SFR-N-3506

*Decided by Acting Regional Commissioner February 11, 1964*

Permanent nature of position of "governess, mother's helper" precludes grant-
ing beneficiary nonimmigrant status as a temporary worker under section
101(a) (15) (H) (ii), Immigration and Nationality Act, even though intended
duration of employment would be limited to 2 years.

This case is before me on appeal from the District Director's denial
of the petition for the following reasons: "In order for the beneficiary
to be classified as nonimmigrant temporary worker, the position to be
filled must be temporary. The United States Employment clearance
order describes the opening as permanent. Your desire to employ the
beneficiary for two to three years does not alter the permanent char-
acter of the position."

The appellant petitions for an alien to perform temporary service
or labor and to perform duties which are themselves temporary in
nature. The descriptive job title of the work to be performed if
admitted was shown in the application as Governess, Mother's Helper.
A clearance certificate from the State of California, Department of
Employment Service on Form ES-560 was submitted. The occupa-
tional title of Governess, Mother's Helper, is shown with respective
codes of G-32.98 and 2-07.03. A permanent job was indicated and the
rate of pay was $200.00 per month plus room and board. The job
summary indicates that the person to be employed was to "teach Greek
language to young childern and act as mother's helper. Three children
ages 10, 8, and 2½ years." The education and experience require-
ments are shown as: "Prefer with diploma from Greek high school.
Must be able to read, write and speak Greek. Pleasant personality.
Be able to perform duties of mother's helper." It is stamped as of June
26, 1963, by the U.S. Employment Service, Bureau of Employment
Security, by Mr. Louis Levine, Director, to show that qualified work-
ers as described in this Form ES-560 are not available within the

United States for referral to the employer by the Employment Service and that Employment Service policies have been observed.

The petitioners are aliens, permanent residents of the United States. The husband is a professor at the University of California Medical School and the wife/petitioner has been assisting a professor of bacteriology at Berkeley, California, and is stated by him to be a key person in the research project in the department of bacteriology supported by NIH grants totaling some half million dollars. It is stated that unless Mrs. Contopoulos "gets just the sort of person she has in mind, she will feel morally obligated to quit her job and stay with her children".

The petitioners have asserted that the beneficiary of this petition will return to her native Greece, that her services would no longer be needed after about two years after her arrival in California and that the beneficiary herself made it clear to the petitioners that she does not wish to leave her family and country (Greece) for a longer period of time. (Petitioner speaks of 3 years.)

The petitioners have indicated that they would do anything necessary to guarantee that the beneficiary would return to Greece at the conclusion of her services and were willing to post whatever bond might be required to insure that the beneficiary would return to her native Greece after her stay here in the capacity sought for a period of about two years. It was also asserted that the youngest child of the petitioners would be attending school at the end of that period and that the mother anticipated concluding her present employment in the University of California by that time.

The admission of temporary workers under prior law had created many problems. Enactment of the Immigration and Nationality Act created a new category of nonimmigrants to provide for the temporary admission of aliens having a fixed foreign domicile seeking to enter the United States for the purpose of furnishing services of an exceptional nature or to perform other services or labor if like unemployed labor could not be found in this country. It was believed that a provision for this category would provide adequate authority for the admission of aliens whose temporary services in this country are needed or held otherwise desirable in the national interest. Pages 588–590, Senate Report 1515, 81st Congress, 2d Session, Report on the Committee on the Judiciary, pursuant to S. Res. 137.

In House Report No. 1365, 82d Congress, 2d Session, accompanying H.R. 5678, on page 44 and 45, similar comment was made:

h. *Temporary workers*

This is new class of nonimmigrants and embraces "an alien having a residence in a foreign country which he has no intention of abandoning (i) who is of distinguished merit and ability and who is coming temporarily to the United

States to perform temporary services of an exceptional nature requiring such merit and ability; or (ii) who is coming temporarily to the United States to perform other temporary services or labor, if unemployed persons capable of performing such service or labor cannot be found in the country; or (iii) who is coming temporarily to the United States as an industrial trainee."

The question of importing any alien as a nonimmigrant in this class is to be determined by the Attorney General as prescribed in section 214(c) which sets forth a petition procedure. These provisions of the bill grant the Attorney General sufficient authority to admit temporarily certain alien workers, industrial, agricultural, or otherwise, for the purpose of alleviating labor shortages as they exist or may develop in certain areas or certain branches of American productive enterprises, particularly in periods of intensified production. They also enable foreign trainees to acquire the knowledge of American industrial, agricultural, and business methods.

This was repeated in substance in Senate Report No. 1137, Calendar No. 1072, 82d Congress, 2d Session accompanying S. 2550 on pages 20 and 21.

The foregoing is part of the legislative history of the provisions of law which became effective December 24, 1952 under Public Law 414. The pertinent provisions of law that obtain are quoted herewith:

Under section 101(a) of the Immigration and Nationality Act, as amended:

(15) The term "immigrant" means every alien except an alien who is within one of the following classes of nonimmigrant aliens—

\*   \*   \*   \*   \*   \*   \*

(H) An alien having a residence in a foreign country which he has no intention of abandoning (i) who is of distinguished merit and ability and who is coming temporarily to the United States to perform temporary services of an exceptional nature requiring such merit and ability; or (ii) who is coming temporarily to the United States to perform other temporary services or labor, if unemployed persons capable of performing such service or labor cannot be found in this country, or (iii) who is coming temporarily to the United States as an industrial trainee.

Section 214 of the Immigration and Nationality Act, in its pertinent portions, reads as follows:

*Sec. 214.* (a) The admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe, including when he deems necessary the giving of a bond with sufficient surety in such sum and containing such conditions as the Attorney General shall prescribe, to insure that at the expiration of such time or upon failure to maintain the status under which he was admitted, or to maintain any status subsequently acquired under section 248, such alien will depart from the United States.

(b) Every alien shall be presumed to be an immigrant until he establishes to the satisfaction of the consular officer, at the time of application for a visa, and the immigration officers, at the time of application for admission, that he is entitled to a nonimmigrant status under section 101(a)(15). An alien who is an officer or employee of any foreign government or of any international organization entitled to enjoy privileges, exemptions, and immunities under the

International Organizations Immunities Act, or an alien who is the attendant, servant, employee, or member of the immediate family of any such alien shall not be entitled to apply for or receive an immigrant visa, or to enter the United States as an immigrant unless he executes a written waiver in the same form and substance as is prescribed by section 247(b).

(c) The question of importing any alien as a nonimmigrant under section 101(a)(15)(H) in any specific case or specific cases shall be determined by the Attorney General, after consultation with appropriate agencies of the Government, upon petition of the importing employer. Such petition shall be made and approved before the visa is granted. The petition shall be in such form and contain such information as the Attorney General shall prescribe. The approval of such a petition shall not, of itself, be construed as establishing that the alien is a nonimmigrant.

It is to be noted that under section 101(a)(15)(H)(ii) above, as well as under (i) above, *both* the coming to the United States and the performance of service or labor must be *temporary*, the term "temporary" being used twice. It must be further noted that section 214(c) states that the approval of such a petition is not of itself to be construed as establishing that the alien is a nonimmigrant.

In determining whether the position of an intern at a hospital was a *temporary* position under (i), note was taken that although the intern would be in the position of intern no longer than a year, that the position of intern was of a continuing nature at the hospital and that such intern would be coming to a permanent position regardless of the actual period of the expected employment of the specific alien (Matter of *M—S—H—*, 8 I. & N. Dec. 460).

In this case, it is urged that the duration of the employment is set by the expressed needs of the petitioners for a period of about two years, by the clear intention of the prospective employee to return to her native country abroad at the end of the contemplated employment here, and because the female petitioner intends to remain at home after this two-year period in order to take care of her own children herself. Because of these particular circumstances, it is contended the job involved must be deemed temporary inasmuch as it is thereby limited in duration.

This merely takes into consideration the limitations set by the parties for the duration of the period of the beneficiary's employment. It does not consider the nature of the duties involved in this function. The test that must still be met is whether this function is of a temporary nature or whether it is of such a continuing nature that it cannot be considered temporary. If the petitioners fall short of establishing that the nature of the employment itself is temporary, then this petition must be denied.

Are the services involved of a temporary nature? The clearance order is for one who will teach the Greek language to young children and act as "mother's helper". The female petitioner asserts that she

657

will be working in the department of bacteriology at the University of California as a research bacteriologist. Therefore, the term "mother's helper" would include those duties normally performed by a housewife and mother of children. These familial duties are not temporary in nature but persist and continue so long as a family unit exists. Since it is the nature of the position which determines whether the job is temporary and not the personal need in an individual case, the duties of "mother's helper" cannot be considered temporary within the meaning of section 101(a)(15)(H)(ii) or section 214 of the Immigration and Nationality Act, *supra.*

Accordingly, it is concluded that the District Director correctly denied this petition and the appeal must be dismissed.

**ORDER:** It is ordered that the appeal from the denial of the petition by the District Director be and is hereby dismissed.