MATTER OF ESSEX CRYOGENICS INDUSTRIES, INC.

In Visa Petition Proceedings

STL–N–968

*Decided by Deputy Associate Commissioner September 22, 1972*

Beneficiary, who is a member of the professions (mechanical engineer) and who is otherwise qualified, is eligible for classification as an alien of distinguished merit and ability under section 101(a)(15)(H)(i) of the Immigration and Nationality Act, as amended, even though he was previously employed with petitioner's engineering staff as a nonimmigrant student for practical training purposes; there are unemployed engineers in the State in which his services are to be performed; and his continued employment by petitioner might adversely affect the wages and working conditions of the workers in the United States similarly employed. (Cf. *Matter of St. Joseph's Hospital*, Interim Decision No. 2166.)

This case comes forward on certification for decision by the Deputy Associate Commissioner, Travel Control. The District Director on August 23, 1972 denied the petition on the grounds that it would be inconsistent to hold that the duties the beneficiary has been performing as practical training are services requiring distinguished merit and ability; and that to grant the petition would be to accord the beneficiary benefits not available to many residents of Missouri who are engineers and, according to the Manpower Administration, now unemployed.

The beneficiary, a native and citizen of Iran, was admitted to the United States on January 28, 1965 as a nonimmigrant student. He studied engineering at Northeastern Oklahoma A&M College and the University of Missouri, from the latter of which he received the degrees of Bachelor of Science and Master of Science, both in Mechanical Engineering, in January 1970 and January 1971, respectively. The Service thereafter granted him permission to accept employment for practical training in his field of study and he took such training with the petitioner through July 30, 1972, the maximum time possible under the regulations.

The petitioner is a manufacturer of aircraft components with a gross annual income of $1,800,000. It alleges that it currently has many contracts including that under the F–15 military aircraft program on which the beneficiary has been employed. The petitioner claims that during the period of his practical training as a member of its engineering staff, the beneficiary proved himself to

196

be a valuable employee and a fine engineer who made a significant contribution to the F-15 program, and whose loss now would seriously hamper that program and add to its cost. It requests that he be classified as a nonimmigrant under section 101(a)(15)(H)(i) of the Immigration and Nationality Act, as amended, to continue in the employ of the petitioner as an engineer in design and testing.

Section 101(a)(15)(H) of the Immigration and Nationality Act, as amended, now reads in pertinent part to define a temporary worker:

> (H) an alien having a residence in a foreign country which he has no intention of abandoning (i) who is of distinguished merit and ability and who is coming temporarily to the United States to perform services of an exceptional nature requiring such merit and ability; or (ii) who is coming temporarily to the United States to perform temporary services or labor, if unemployed persons capable of performing such service or labor cannot be found in this country;
>
> ...

The occupation of engineer is defined as a profession in section 101(a)(32) of the Immigration and Nationality Act, as amended. The beneficiary here by virtue of his education as a mechanical engineer is a member of the professions. *Matter of Semerjian*, 11 I. & N. Dec. 751 (1966). The Service has long held that a person who is qualified as a member of the professions qualifies as a person "of distinguished merit and ability" as that term is used in section 101(a)(15)(H)(i), *supra*. If, additionally, he is to temporarily perform specified services which require his professional abilities, he is qualified for "H-1" classification. The petitioner in the present case now employs the beneficiary as an engineer and has made an adequate showing that he intends to continue temporarily the beneficiary's services in that capacity, one which requires a person of the beneficiary's training and experience. It is immaterial that his earlier employment with the petitioner was for the purpose of acquiring practical training.

The other ground advanced by the District Director for denying the petition—the fact that there are now engineers residing in Missouri who are unemployed—is equally untenable. In originally framing section 101(a)(15)(H), *supra*, the Congress chose to include only for the H-2 temporary worker the condition, "if unemployed persons capable of performing such service or labor cannot be found in this country." This qualification is not present in the H-1 definition, and it must be concluded that its omission was deliberate. It is consequently only for the H-2 worker that the Service requires the petitioner to apply for the Secretary of Labor's certification that qualified persons in the United States are not available and that the alien's employment will not adversely affect

the wages and working conditions of persons in the United States similarly employed (8 CFR 214.2(h)(3)).

The Congress last had occasion in 1970 to review and amend section 101(a)(15)(H), *supra*. The resulting P.L. 91–225 was approved on April 7, 1970 and restated the then existing section of law, modifying it essentially only to delete the requirement that the services be temporary which the H–1 alien is coming to perform. It is apparent therefore that the Congress intended to relax the H–1 definition rather than to add to its conditions (as of course it could have done at that time) the requirement of non-availability of other capable persons in this country. The thinking of the House Committee on the Judiciary, which recommended passage of this 1970 amendment, is illustrated in the following excerpt from its report (House Report No. 91–851, 91st Congress, 2nd Session, page 3):

Experience with the operation of the Immigration and Nationality Act has clearly indicated that there is a need to modernize certain provisions regarding the admission of nonimmigrants. Specially skilled foreign nationals coming to the United States for temporary employment or training are able to enter this country as nonimmigrants under the provisions of section 101(a)(15)(H) and (J) of the Immigration and Nationality Act. However, certain limitations and conditions contained in these sections have caused difficulties in administration, produced hardships, and have been a source of friction with universities, hospitals, international organizations, and other potential employers of distinguished or specially qualified aliens in the United States.

It is not material to the beneficiary's statutory eligibility for H–1 classification that there are other engineers in Missouri who are unemployed or indeed that his employment by the petitioner might have an adverse effect on the wages and working conditions of workers in the United States similarly employed. This conclusion is compelled by the difference between the H–1 and H–2 provisions in the law.

**ORDER:** *It is ordered* that the visa petition be and the same is hereby approved.